UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TABATHA ALCORN,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.

                                                  Case No. 1:13-cv-988

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. On December 23, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #13).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 37 years of age on her alleged disability onset date.  (Tr. 34).  She successfully completed high school and previously worked as a cashier and cook.  (Tr. 34, 177). Plaintiff applied for benefits on April 21, 2011, alleging that she had been disabled since April 2, 2010, due to a learning disability, an inability to read and write, and dyslexia.  (Tr. 19, 176). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 63-155).  On September 7, 2012, Plaintiff appeared before ALJ JoErin O'Leary with testimony being presented by Plaintiff and a vocational expert.  (Tr. 41-62).  In a written decision dated November 15, 2012, the ALJ determined that Plaintiff was not disabled.  (Tr. 19-36).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6).  Plaintiff initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On June 21, 2003, Plaintiff participated in a consultive examination conducted by James Findley, Ph.D.  (Tr. 279-81).  Plaintiff reported that she was disabled "due to illiteracy and depression."  (Tr. 279).  The results of a mental status examination were unremarkable.  (Tr. 280).

3

Plaintiff participated in intelligence testing the results of which revealed she possessed a verbal IQ of 69, a performance IQ of 87, and a full scale IQ of 76. (Tr. 281). Plaintiff was diagnosed with reading disorder and dysthymia and her GAF score was rated as 55.[1] (Tr. 281).

On February 4, 2010, Plaintiff reported that she was "feeling better" since beginning depression medication. (Tr. 333). Treatment notes dated June 22, 2010, indicate that Plaintiff's depression was "stable" and that she was sleeping "okay." (Tr. 353). Treatment notes dated August 12, 2010, indicate that Plaintiff's depression was "stable." (Tr. 365-67).

On December 3, 2010, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed:

1. Trace degenerative changes at L4-5 and L4-S1 with no significant central canal stenosis or neural foraminal stenosis.

2. Minimal encroachment in the left neural foramen at L4-5 is improved with no significant residual stenosis evident on current study.

(Tr. 311-13).

X-rays of Plaintiff's chest, taken January 29, 2011, were "normal." (Tr. 391). X-rays of Plaintiff's chest, taken March 27, 2011, revealed "no acute disease in the chest." (Tr. 393). On May 3, 2011, Plaintiff participated in a CT examination of her abdomen and pelvis the results of which were "negative." (Tr. 397-99).

Treatment notes dated May 16, 2011, indicate that Plaintiff's depression was "stable" and that her medication was "working well." (Tr. 284). Plaintiff's "mood and affect" were characterized as "appropriate for situation" and she exhibited "normal attention span and

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

concentration." (Tr. 285). With respect to Plaintiff's previous complaints of back pain, it was noted that Plaintiff exhibited "normal" range of motion, "normal muscle strength," "unremarkable" gait and station, and "negative" straight leg raising. (Tr. 284).

X-rays of Plaintiff's right ankle, taken July 13, 2011, revealed "no evidence of significant abnormalities." (Tr. 477). Treatment notes dated July 25, 2011, indicate that Plaintiff exhibited "normal" range of motion, "normal" muscle strength and tone, and "unremarkable" gait and station. (Tr. 449). On August 26, 2011, Plaintiff participated in a CT examination of her abdomen and pelvis the results of which revealed "no evidence of kidney stones or hydronephrosis." (Tr. 472-73).

Treatment notes dated August 29, 2011, indicate that Plaintiff's depression was "stable." (Tr. 452). Treatment notes dated November 3, 2011, likewise indicated that Plaintiff's depression continued to be "stable." (Tr. 454).

On February 2, 2012, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed:

1. No vertebral compression deformity or acute malalignment.

2. No significant interval change within the mild multilevel degenerative changes, as described above. No evidence of severe canal stenosis or neural foraminal narrowing.

(Tr. 478-79).

On May 18, 2012, Plaintiff participated in a CT scan of her cervical spine the results of which revealed: (1) no vertebral compression or acute malalignment; (2) no prevertebral soft-tissue swelling; and (3) mildly enlarged mediastinal lymph nodes. (Tr. 482-83).

Treatment notes dated May 23, 2012, indicate that Plaintiff's depression was "stable"

5

with medication.  (Tr. 470).

At the administrative hearing, Plaintiff testified that she was experiencing "numbness [and] tingling" in her legs which prevented her from engaging in activities.  (Tr. 47-48).  Plaintiff reported that she experienced incredible difficulty performing even the most basic household chores.  (Tr. 48-49).  For example, Plaintiff reported that "if I do my dishes, I can do a little bit of my dishes and then I'm done for the day."  (Tr. 48).  Plaintiff further testified that it takes her "about four hours" to wash her dishes.  (Tr. 48).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) lumbar degenerative disc disease; (2) obesity; (3) borderline intellectual functioning; (4) a history of a learning disorder; (5) a depressive disorder; and (6) a personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-25).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) she cannot climb ladders, ropes, or scaffolds; (2) she cannot work around hazards, including unprotected heights or dangerous machinery; (3) she is limited to simple work which requires no more than occasional interaction with co-workers; and (4) she is limited to low stress work which does not

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

require more than occasional changes in work setting. (Tr. 25).

        The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

        The vocational expert reported that there existed in the state of Michigan approximately 31,400 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 269-70). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

**I.          The ALJ Properly Discounted Plaintiff's Subjective Allegations**

As noted above, Plaintiff testified at the administrative hearing that her ability to function was more limited than the ALJ ultimately recognized. Plaintiff argues that she is entitled to relief because the ALJ improperly rejected her subjective allegations of pain and limitation.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discounted Plaintiff's subjective allegations of pain and limitation on the ground that such were contradicted by the evidence of record, including the objective medical evidence, Plaintiff's treatment history, and Plaintiff's reported activities. As the evidence discussed above indicates, this determination is supported by substantial evidence.

**II.        The ALJ Properly Evaluated the Medical Evidence**

Plaintiff asserts that she is entitled to relief because the ALJ failed to afford appropriate weight to the opinions expressed by two of her care providers: (1) Physician's Assistant Tricia McGillis, and (2) James Findley, Ph.D.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

### A. Physician's Assistant McGillis

McGillis opined that during an 8-hour workday, Plaintiff can sit for "less than 2 hours" and stand/walk for "about 2 hours." (Tr. 425). McGillis reported that Plaintiff can frequently

lift/carry 10 pounds and occasionally lift/carry 20 pounds. (Tr. 426). McGillis reported that Plaintiff required a sit/stand option and must be permitted to take several unscheduled breaks during the workday. (Tr. 425). McGillis also reported that Plaintiff can occasionally climb stairs, but can rarely twist, stoop, or crouch. (Tr. 426).

The requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). McGillis, a physician's assistant, is not considered an acceptable medical source, thus her opinion is not entitled to any special deference. *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Crabtree v. Commissioner of Social Security*, 2015 WL 74955 at *6 (S.D. Ohio, Jan. 6, 2015).

Nevertheless, physician's assistants and other unacceptable medical sources, are permitted to offer statements regarding "the severity of [a claimant's] impairment(s) and how [such] affects [his] ability to work." *See*, *e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d). When evaluating a statement from an unacceptable medical source, the ALJ is not required to assess such pursuant to the factors articulated above. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 ("[t]he factors set forth in 20 C.F.R. § 404.1527. . .apply only to medical opinions from acceptable medical sources"). Instead, the ALJ is required simply to "consider" statements from unacceptable medical sources. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 (quoting Social Security Ruling 06-03P, 2006 WL 2329939 at *4 (S.S.A., Aug. 9, 2006)). The ALJ considered McGillis' statement and found that it was "not fully consistent with" the medical evidence, a conclusion supported by the medical evidence as discussed above.

B.     Dr. Findley

The basis for this particular argument is difficult to discern, especially considering Plaintiff's failure to sufficiently develop or articulate such. First, because Dr. Findley examined Plaintiff on only one occasion, his opinion is not entitled to any deference. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506-07 (6th Cir. 2006). Furthermore, the doctor did not even express any opinion which is inconsistent with the ALJ's RFC determination. The results of a mental status examination were unremarkable and Plaintiff's cognitive limitations are sufficiently accounted for in the ALJ's RFC determination. The doctor did assign to Plaintiff a GAF score which suggests that Plaintiff experiences "moderate symptoms or moderate difficulty in social, occupational, or school functioning." As the ALJ recognized, however, GAF scores are "a highly subjective and non-standardized measure of symptom severity." (Tr. 32-33). Accordingly, the ALJ afforded only "some weight" to the doctor's conclusions. This is consistent with Sixth Circuit authority which provides that because a GAF score "is not raw medical data," the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 503 n.7, 511. The ALJ's assessment of Dr. Findley's findings is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date:  February 12, 2015              /s/ Ellen S. Carmody
                                     ELLEN S. CARMODY
                                     United States Magistrate Judge